UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER KINARD,

    Petitioner,

v.

SHERRY L. BURT,

    Respondent.

Case No. 15-cv-12137
Honorable Laurie J. Michelson

## OPINION AND ORDER DENYING PETITIONER'S MOTION TO AMEND [5] AND MOTION FOR REMAND [6], AND TRANSFERRING THE PETITION [1] TO THE COURT OF APPEALS

Petitioner Walter Kinard has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging his life sentence following a 1987 \ conviction for armed robbery in state court—a sentence that reflected a significant upward departure from Michigan's sentencing guidelines. (R. 1.)  This petition, however, is a "second or successive" petition as that phrase is used in 28 U.S.C. § 2244(b). As such, the Court must transfer the petition to the United States Court of Appeals for the Sixth Circuit to decide whether this Court may consider Kinard's claims.

I.

Following a bench trial in 1987, Kinard was convicted of armed robbery in violation of Mich. Comp. Laws § 750.529, and possession of a firearm during the commission of a felony (felony firearm) in violation of Mich. Comp. Laws § 750.227b. (R. 1, PID 30.) Under Michigan law, a conviction for armed robbery is "punishable by imprisonment for life or for any term of years." Mich. Comp. Laws § 750.529. Prior to his sentencing for armed robbery, Kinard was convicted in another case of first-degree murder, assault with intent to commit murder, and

felony firearm. In the armed robbery case, Kinard received a life sentence with the possibility of parole. At sentencing, the trial court stated:

> As far as I'm concerned the guidelines are totally ridiculous in this particular instance. . . . The guidelines in this matter, as I see before me, are seventy-two to a hundred and twenty months as a minimum sentence which, as I stated earlier, are totally ludicrous and ridiculous in the circumstances here and an armed robbery created with a firearm and I believe that this Defendant must be disciplined to protect society and I don't believe there's any potential for reformation of this Defendant and to deter others and send the word out that committing like offenses is not going to be tolerated in this community.
>
> People are fed up with robbers, rapists, murders, B & E's. They're fed up with crimes in general in this town. I get letters and calls every day from the community and we have to set examples. I can't do anything more than Judge Moore has given you. In fact, the life sentence I'll give you will run concurrent and it's the same type of a life sentence. This one he's eligible for parole. That should be reversed. The sentence of this Court is you be committed to the State Prison of Southern Michigan Department of Corrections in Count I, for the rest of your natural life. That shall run consecutive to Count II, two years mandatory for felony firearm and Count I shall run concurrent with the time that you're serving the life sentence on now and I have indicated the reasons why I'm deviating from the guidelines[.]

(R. 6, PID 133–35.)

The Michigan Court of Appeals affirmed Kinard's convictions and sentence, but remanded the case so that Kinard's "sentencing information report" could be modified to (1) correct the sentencing guidelines' scoring for certain improperly scored prior record variables, (2) reflect the trial court's reasons for departing from the sentencing guidelines, and (3) omit scoring of the crimes from the unrelated case. (R. 1, PID 32.) The Court of Appeals declined to grant re-sentencing because the trial court had already stated—at a previous hearing on Kinard's motion for resentencing—that it would have departed from the guidelines and imposed the same life sentence even if the sentencing information report had been correct. (*See id.*, PID 31–32.) On April 30, 1989, the Michigan Supreme Court denied leave to appeal. (*Id.*, PID 39.)

2

Kinard's convictions in the unrelated murder case subsequently were reversed, ultimately leading Kinard to plead guilty to second-degree murder and assault with intent to do great bodily harm. (*Id.*) He has completed his sentences for those crimes. (*Id.*)

In 1997, Kinard filed a motion for relief from judgment from his armed robbery conviction, which the trial court denied. (*Id.*) Several years later, however, the trial court permitted Kinard to file an amended motion for relief from judgment. (*Id.*, PID 40.) On April 9, 2007, the trial court denied the amended motion for relief from judgment, but it ordered the probation department to update the sentencing information report to reflect that the unrelated murder convictions and sentences had been reversed—which was never done after the Michigan Court of Appeals' order close to 20 years earlier. (R. 1, PID 46–47, *People v. Kinard*, No. 86-009211 (Wayne Cty. Cir. Ct. Apr. 9, 2007).) The trial court noted that this was a "purely administrative task" that did not require any response from the prosecutor's office. (R. 1, PID 48.) The Michigan Court of Appeals dismissed Kinard's subsequent appeal from the trial court's order, and on June 23, 2008, the Michigan Supreme Court denied leave to appeal. *See People v. Kinard*, 752 N.W.2d 454 (Mich. 2008) (table).

On November 28, 2008, Kinard filed a federal habeas corpus petition in which he claimed that his sentence was invalid, his sentencing information report was inaccurate, and his trial counsel had been ineffective. The petition was denied as untimely, *see Kinard v. Booker*, No. 08-14992 (E.D. Mich. Aug. 5, 2010), and the Sixth Circuit affirmed this ruling. *See Kinard v. Booker*, No. 10-2129 (6th Cir. Sept. 22, 2011). On April 30, 2012, the United States Supreme Court denied Kinard's application for a writ of certiorari. *See Kinard v. Booker*, 132 S. Ct. 2105 (2012).

Documents attached to Kinard's current petition indicate that in 2013 and 2014, efforts were made to amend his presentence investigation report in response to the trial court's 2007 order to amend the sentencing information report (SIR), but Kinard disputed the accuracy of the amendments, including the calculation of the sentencing guidelines range. For instance, in June 2013, the Michigan Department of Corrections notified Kinard that in response to the 2007 order to correct the SIR, Kinard's presentence investigation report was corrected—at least to the extent that the guidelines range was recalculated to 24–72 months and references to two convictions from the unrelated case were removed. (R. 1, PID 55.) According to Kinard, his "report has been changed (4) four times, within the last (12) month's by the Probation Officer who has continued to partially repair certain parts of the (PSI) Report, without petitioner's imput [*sic*]." (R. 1, PID 12.)

On June 10, 2015, Kinard filed another habeas corpus petition with this Court. (R. 1.) He alleges that (1) "[t]he sentence was enhanced based upon the expired discharged conviction ruled invalid" and (2) "[t]he PSI report and new corrections was [i]mproperly scored." (R. 1, PID 4.)

On September 3, 2015, Kinard filed a motion to amend his petition because of the Michigan Supreme Court's July 2015 decision in *People v. Lockridge*, 870 N.W.2d 502, 525 (Mich. 2015), which held that Michigan's sentencing guidelines scheme violates the Sixth Amendment to the extent it permitted judicial fact finding "used to compel an increase in the mandatory minimum punishment a defendant receives." (R. 5.) While labelled as a motion to "amend," it appears to make only these three requests: (1) Kinard seeks a "determination hearing to review the applicability"—apparently of *Lockridge*—to his sentence; (2) an order appointing counsel "to argue this claim of Constitutional importance"; and (3) a "remand" pursuant to

4

*Lockridge*. (R. 5, PID 106.) Finally, on November 3, 2015, Kinard filed another motion to "remand" in order "to determine the applicability of the *Lockridge* case." (R. 6, PID 121.)

## II.

As noted, the federal habeas petition presently before the Court is not Kinard's first. Yet "[f]ederal law generally gives habeas petitioners one shot to pursue their claims in federal court." *In re Stansell*, —F.3d—, No. 15-4244, 2016 WL 3606808, at *1 (6th Cir. July 1, 2016). As 28 U.S.C. § 2244(b)(3)(A) provides, "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." Kinard has not alleged that he received permission from the Court of Appeals to file a second or successive habeas corpus petition, and this Court has found no appellate records indicating that the Sixth Circuit granted such permission. Accordingly, if the petition now before the Court is a "second or successive" petition within the meaning of 28 U.S.C. § 2244(b), this Court must transfer the petition to the Sixth Circuit for a determination of whether this Court may consider the petition. *See In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997) (per curiam) ("[W]e hold that when a prisoner has sought § 2244(b)(3) permission from the district court, or when a second or successive petition for habeas corpus relief or § 2255 motion is filed in the district court without § 2244(b)(3) authorization from this court, the district court shall transfer the document to this court pursuant to 28 U.S.C. § 1631.").

Although not every later-in-time petition is "a second or successive habeas corpus application" within the meaning of 28 U.S.C. § 2244(b), *see Magwood v. Patterson*, 561 U.S. 320, 332 (2010), the Court finds that Kinard's current petition is.

5

Kinard's prior federal habeas petition was dismissed as untimely. And "dismissal of a section 2254 habeas petition for failure to comply with the statute of limitations renders subsequent petitions second or successive for purposes of [§ 2244(b)]." *McNabb v. Yates*, 576 F.3d 1028, 1030 (9th Cir. 2009); *see also In re Rains*, 659 F.3d 1274, 1275 (10th Cir. 2011) (per curiam) (citing cases).

The intervening changes to Kinard's presentence investigation report do not entitle him to overcome the second-or-successive hurdle. The Sixth Circuit has acknowledged that it is "difficult" to "distinguish[] first from second petitions when the claimant obtains relief between the two petitions." *King v. Morgan*, 807 F.3d 154, 157 (6th Cir. 2015). In *Magwood*, the Supreme Court adopted a judgment-based approach to this problem, holding, "[W]here . . . there is a new judgment intervening between the two habeas petitions, . . . an application challenging the resulting new judgment is not 'second or successive' at all." 561 U.S. at 341–42. According to the Sixth Circuit, "Because petitions seek the '*invalidation* (in whole or in part) *of the judgment* authorizing the prisoner's confinement,' *Magwood* tells us, no part of the petition counts as second or successive as long as it is the first to challenge the new judgment." *King*, 807 F.3d at 157 (emphasis in original). Thus, as the Sixth Circuit has recently held, because "[f]inal judgment in a criminal case means sentence," even "partial resentencing restart[s] the second or successive count." *Stansell*, 2016 WL 3606808, at *3 (distinguishing resentencing in the form of adding a post-release control from "a technical amendment, the sort of ministerial change that does not alter the substance of [a] sentence and thus does not create a new judgment").

Here, nothing in the record suggests that Kinard was resentenced or otherwise received a new judgment simply because adjustments were made to his presentence investigation report. True, the report's recommended guidelines range appears to have changed. But Kinard's

6

sentence was and remains a life sentence. And decades ago, a sentencing judge put on the record his reasons—albeit questionable ones—for imposing that sentence instead of a lesser one. Any challenge to the guidelines range or other alleged inaccuracies now contained in the revised report still strikes at the judge's initial determination to depart upward and impose a life sentence. And Kindard's federal habeas challenge to that determination has already been held to be untimely. Accordingly, the Court finds that Kinard's habeas petition is a "second or successive" application within the meaning of § 2244(b).

As for Kinard's two motions concerning the Michigan Supreme Court's decision in *Lockridge*, the Court will deny them. In each motion, Kinard asks for some form of "remand" pursuant to *Lockridge*. It appears that the thrust of each motion is that Kinard seeks to have his habeas petition stayed or held in abeyance in order to return to state court to exhaust his *Lockridge* claim. Because the Court has determined that Kinard's petition is a "second or successive" application, it must await authorization by the Court of Appeals to consider the application. *See* 28 U.S.C. § 2244(b)(3)(A); *see also Smith v. Brunsman*, No. 1:11CV1763, 2011 WL 5838180, at *3 (N.D. Ohio Oct. 24, 2011), *report and recommendation adopted*, No. 1:11 CV 1763, 2011 WL 5837943 (N.D. Ohio Nov. 18, 2011) ("Because this petition is a second and successive petition, this court has no jurisdiction to address this petition, including staying the proceedings."). So, at this time, the Court cannot consider whether staying the petition or holding it abeyance is appropriate.

### III.

For the foregoing reasons, the Clerk of the Court shall transfer Kinard's petition to the Court of Appeals for the Sixth Circuit pursuant to 28 U.S.C. § 1631 for a determination of whether this Court may consider Kinard's habeas claims.

7

It is further ordered that Kinard's motion to amend (R. 5) and his motion to remand (R. 6) are DENIED.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  August 31, 2016

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 31, 2016.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson